UNITED STATES of America,

v.

Kathy D. HUBBARD, Appellant.

No. 88–3108.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 6, 1989.

Decided Nov. 14, 1989.

Daniel E. Ellenbogen, appointed by this Court, for appellant.

Ann K.H. Simon, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and John P. Dominguez, Asst. U.S. Attys., were on the brief, for appellee.

Before: BUCKLEY, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This appeal stems from a judgment of conviction of appellant Kathy Hubbard for conspiracy to commit bank theft and bank fraud (count 1), 18 U.S.C. § 371; bank theft of forty-six checks totalling $26,-632.27 on October 9, 1987 (count 2), 18 U.S.C. § 2113(b); interstate transportation of the securities described in count 2 (count 4), 18 U.S.C. § 2314; bank theft of a single check in the amount of $1,230.30 (count 5), 18 U.S.C. § 2113(b); and bank fraud involving the security described in count 5 (count 6), 18 U.S.C. § 1344.

Hubbard appeals her convictions on counts 1, 5, and 6. She contends that the District Court erred by not giving the jury a special unanimity instruction with respect to the conspiracy count, that there was insufficient evidence to support a finding of bank fraud, and that her conviction on count 5 violates the constitutional prohibition against double jeopardy, U.S. Const. amend. V, arguing that the theft of the same check was charged in both counts 2 and 5. After review of each allegation of error, we find that none merits relief, and therefore affirm conviction on all counts.

## I. BACKGROUND

The government offered evidence that Kathy Hubbard was a check processor at Century National Bank ("Century"), a federally chartered financial institution located in the District of Columbia. Columbia National Bank ("Columbia"), also a federally chartered financial institution located in the District of Columbia, was an affiliate of Century. Hubbard worked in a nonpublic basement area reviewing and making microfilm copies of items presented to Century or Columbia for cash or deposit. Hubbard, who had been fired by Century, worked her last day on October 6, 1987. On that day Century discovered that two checks deposited on October 5 by Ingrid's Temps were missing. One check was written on the account of Consumers United Insurance Company for $1,230.30.

On October 9, Hubbard returned to Century to remove her personal belongings. She cleaned out her desk, which was in an area not visible to others, and left ten to fifteen minutes later carrying a white plastic bag. A bundle of checks that had been sent by Columbia to Century for processing was missing at the end of the day. The checks had been left near the microfilm machine which was within arm's reach of Hubbard's desk. The total amount of the missing items was $26,632.27.

After leaving the bank, Hubbard showed the checks to her cousin, Rollie Montgomery, and asked for his help negotiating them. The two altered and Montgomery successfully negotiated a payroll check written on the account of Allied Security Co., a Clinton, Maryland business. Montgomery and Hubbard split the proceeds. Montgomery successfully negotiated six or seven other Allied checks given to him by Hubbard, who kept the checks herself and doled them out a few at a time.

The two also went to the District of Columbia to solicit the help of Melvin Hayes. Hubbard gave Hayes several checks with the understanding that if he negotiated them he would share the proceeds. Hayes successfully deposited two of the checks, keeping the proceeds himself, and returned the remaining ones to Hubbard. Hubbard successfully altered and negotiated a Consumers United check that had been missing from Century since October 6 by depositing the check in her account at Citizens Bank and Trust Company of Maryland.

Hubbard did not offer a substantive defense other than a general denial.

## II. Special Unanimity Instruction

Count 1 of the indictment against Hubbard alleges conspiracy. One alleged object of the conspiracy was "[t]o defraud Century National Bank in the District of Columbia of moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Century National Bank, in violation of Title 18, U.S.Code, Section 1344," and the other was "[t]o receive, possess, conceal, store, barter, sell and dispose of property, money and other things of value which had been stolen from Century National Bank, well knowing said items were stolen, in violation of Title 18, U.S.Code, Section 2113(c)." The count listed eleven different overt acts in furtherance of this conspiracy.

Hubbard argues that the District Court should have instructed the jury that it had to find unanimously a specific object of the conspiracy and a specific overt act in furtherance of that conspiracy, so that it would not convict if, for example, only six jurors found that Hubbard committed one particular overt act and conspired for one particular object, while the other six found that she committed a different overt act in pursuit of a different objective.

Hubbard relies on the Fifth Circuit's decision in *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977), in which it held that the district court erred in instructing the jury that it need not agree about what the defendant actually did before convicting him under the relevant statute where the various acts proscribed by the statute fell into two distinct conceptual groupings. This Circuit strongly approved a District of Columbia Court of Appeals rule requiring an instruction on the need for unanimity on the particular acts on which a guilty verdict is based. *United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C.Cir.1982) (dicta). As we said there, however, in reviewing for plain error a jury instruction lacking a particularized instruction, we must look to "the context of th[e] entire charge and the whole trial," and ask whether "a conscientious juror would have understood that he must agree with the other jurors on which [criminal acts were committed]." 694 F.2d at 1281.

■ Because Hubbard did not object to the District Court's general unanimity instruction below, her challenges are subject to "plain error" review under Fed.R. Crim.P. 52(b). *See United States v. Baker*, 693 F.2d 183, 187 (D.C.Cir.1982). The District Court's failure to instruct the jury that it had to agree unanimously on the object of the conspiracy was not plain error. There is virtually no risk that the jury was divided as to the object of the conspiracy since it convicted Hubbard of one of the underlying substantive offenses alleged as an object of the conspiracy. Because the jury unanimously found that Hubbard had violated 18 U.S.C. § 1344 by defrauding Century of funds, it does not matter whether the jury also unanimously agreed that violating § 2113(c), or a particular element thereof, was an object of the conspiracy. The jury was clearly unanimous as to at least one of the alleged objects of the conspiracy.[1]

■ Nor was the District Court's failure to give a special unanimity instruction concerning the overt act in furtherance of the conspiracy plainly erroneous. After the *Gipson* decision, the Fifth Circuit held that the jury did not have to be unanimous as to which overt acts formed the basis for its guilty verdict on a conspiracy charge where the various overt acts alleged fell into the same "'conceptual group.'" *United States v. Sutherland*, 656 F.2d 1181, 1202 (5th Cir.1981), *cert. denied*, 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). In the present case, the various overt acts alleged fall into the same conceptual grouping in that most involve the theft and negotiation of various checks.[2]

1. By the same token, the court's failure to instruct the jury on the elements of the § 2113(c) offense (the second alleged object of the conspiracy) was not plain error since the jury apparently found that violating § 1344 was an object of the conspiracy. This finding was sufficient to support the conviction regardless of how the jury treated § 2113(c).

2. The only arguable outlier is the allegation that Hubbard warned Montgomery that the FBI was investigating him and encouraged him to flee.

Further, in response to the jury's question, "How many elements of each count make that particular count guilty or not guilty?" the District Court advised that the government had to prove each and every element of the count beyond a reasonable doubt, further reducing the possibility that the jury would find Hubbard guilty on a count as to which it was divided on the basis underlying that guilty finding.

We express no opinion as to whether a special unanimity instruction might *ever* be required with respect to the overt act of an alleged conspiracy, but do find that in this case, given the similarity and interrelatedness of the overt acts alleged, the District Court's statement that the government was obliged to prove every element of a count, and Hubbard's failure to object to the general unanimity instruction at trial, the District Court's instruction was not plainly erroneous.

### III. OTHER CLAIMS

■ Arguing that Century was not the victim of her scheme, Hubbard contends that there was insufficient evidence to convict her under 18 U.S.C. § 1344 for defrauding a federally chartered or insured financial institution. She relies on *United States v. Blackmon*, 839 F.2d 900 (2nd Cir.1988), in which the Second Circuit held that § 1344 did not apply to a scheme whereby the victims of a fraud were induced to withdraw their funds from the bank and turn them over to their defrauders.

We find *Blackmon* inapposite. To be sure, § 1344 only covers frauds against banks themselves. However, there is no question in this case that the jury could properly find that Century itself was a victim of Hubbard's fraud. In contrast to the funds in *Blackmon* which were withdrawn from the banks legally by the victims of the fraud, the check in question here was wrongfully taken from the custody and control of the bank itself, as proscribed by § 1344. Moreover, given that the check was taken while in the bank's possession, the bank apparently was required to credit Ingrid's Temps' account for the amount of the check even if the bank itself did not recover on the check. Because Hubbard's scheme, in any event, deprived the bank of its custody and control over the check, we need not conduct a detailed analysis of banking law to determine whether the bank or some other party ultimately was liable for the loss stemming from the theft of the check. By thereafter altering and negotiating the check, Hubbard defrauded the bank of its property interest in violation of § 1344.

■ Hubbard's argument that the evidence failed to connect the fraudulent scheme to Washington, D.C., where the case was tried, is meritless. The evidence showed that as part of the scheme, checks were taken from Century Bank in Washington, D.C.; Hayes was later recruited to the scheme in D.C. Either of these events is enough under the venue provision, 18 U.S.C. § 3237.

■ Hubbard also argues that her conviction on count 5 violates double jeopardy principles since the same check described in count 5 may have been included in the group of checks described in count 2.

We find this contention unmeritorious. The government offered evidence that after Century discovered that a stack of checks from Columbia was missing, it determined, based on machine tapes and microfilm records, that Columbia had delivered some 47 more checks, totalling $26,632.27, than were accounted for by Century (Tr. 71–73). This group of checks that Columbia had delivered to Century on October 9, described in count 2, did not include the $1,230.30 check deposited by Ingrid's Temps into its account at Century on October 5.

However, the government presented no evidence on this alleged overt act and it was not read to the jury on instruction or reinstruction (Tr. 474–75, 485–86, Tr. Instructions 560–63) ("Tr. ——" citations are to the sequentially numbered pages of the Transcript of Trial; "Tr. Instructions ——" citations refer to the Transcript of Closing Arguments of the Government, and Jury Instructions).

## IV. Conclusion

We have examined all of the allegations of error and find none to merit relief. We, therefore, affirm the judgment of the District Court.